**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABUSSAMAA RASUL RAMZIDDIN<br><br>Plaintiff,<br><br>v.<br><br>ANGELO J. ONFRI, ESQ, *et al.*,<br><br>Defendants. | Civil Action No. 19-17578 (ZNQ) (DEA)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon two Motions to Dismiss, which were filed separately. The first Motion to Dismiss ("First Motion to Dismiss") is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Gurbir S. Grewal, Attorney General of New Jersey, and Michael R. Sarno, Deputy Attorney General, appearing on behalf of Mercer County Head Prosecutor Angelo J. Onofri ("Onofri")[1], Assistant Prosecutor Heather Hadley ("Hadley"), and Detective Alicia Bergondo ("Det. Bergondo") (collectively, "MCPO Defendants"). The second Motion to Dismiss ("Second Motion to Dismiss") is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Steven A. Kroll of Connell Foley LLP, appearing on behalf of Defendants Skylar S. Weissman ("Weismann") and Helmer, Conley & Kasselman, P.A.

---

[1] The Complaint misspells Defendant Onofri's name as "Onfri." Plaintiff appears to have recognized the error and corrected it by the time he completed the summons for Defendant Onofri because there he is spelled correctly. (*See* ECF No. 13 at 1.) Onofri's counsel shows the correct spelling in the Motion to Dismiss. (ECF No. 25.) Neither party has made an effort to correct the caption for this matter. Nevertheless, the Court will refer to Defendant Onofri in this Opinion by his correct name.

1

MCPO Defendants filed a Brief in Support of their Motion ("MCPO's Moving Br.", ECF No. 25), and Defendant Weissman filed a Memorandum of Law in Support of his Motion. ("Weismann's Moving Br.", ECF No. 26.) Plaintiff filed an Opposition to these Motions. ("Pl.'s Opp'n Br.", ECF Nos. 27, 29.) Defendants replied to Plaintiff's Opposition. ("MCPO's Reply," ECF No. 32; "Weissman's Reply Br.," ECF No. 33.)

The Court has carefully considered the parties' submissions and decided the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motions.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On or about February 12, 2018, Det. Bergondo served a subpoena on the Medical Home Pharmacy, located in Trenton, New Jersey, to investigate two alleged fraudulent prescriptions provided by Plaintiff Abussamaa Rasul Ramziddin ("Plaintiff"). (Compl. at 8.)[2] On February 26, 2018, Plaintiff appeared at the Mercer County Prosecutor's Office with Defendant Weissman, his defense counsel, and was formally charged with insurance fraud. (*Id.* at 8–9.) Prosecutor Onofri offered Plaintiff two plea deals. (*Id.*) On or about March 5, 2018, Plaintiff and Weissman received the discovery materials provided by the MCPO Defendants. (*Id.*) Plaintiff and Weissman pointed out that several inconsistencies in the evidence existed and were then advised by the State that a supplemental statement would be added. (*Id.*) A grand jury indicted Plaintiff on all charges brought by the State. (*Id.*) On January 29, 2019, Plaintiff met with Weissman and a non-party, Yaron Helmer, a partner at Helmer, Conley & Kasselman, P.A., and Plaintiff rejected the plea offer against the advice of Weissman. (*Id.*) Plaintiff then filed, pro se, a Motion to Dismiss the Indictment. (*Id.* at 10.) Weissman continued to speak with Prosecutor Hadley about the

---

[2] The Complaint is not presented in numbered paragraphs; therefore the Court cites to it by page number.

2

deficiencies in the case, and the State moved to dismiss the indictment in its entirety on the grounds that it could not meet its burden, with the Court entering a Consent Order on July 19, 2019, for dismissal of the indictment with prejudice. (*See* Weissman's Moving Br. at 5; Kroll Decl., Exhs. B & C (ECF Nos. 26-1, 26-2.)) Plaintiff's pro se Motion to Dismiss the Indictment was never decided. (*Id.*)

On September 9, 2019, Plaintiff filed the present Complaint against the MCPO Defendants and Weissman. (ECF No. 1.) It alleges six counts against all defendants: (1) violation of due process and equal protection rights under 42 U.S.C. § 1983; (2) malicious abuse of process under 42 U.S.C. § 1983; (3) conspiracy to violate constitutional rights under 42 U.S.C. § 1985; (4) conspiracy to racially profile, harass and bring false charges under 42 U.S.C. § 1985; (5) failure to prevent an abuse of process under 42 U.S.C. § 1986; and (6) violation of the New Jersey Constitution pursuant to Article 1, paragraph 1. (*Id.* at 12–13.) Plaintiff seeks both monetary and punitive damages. (*Id.* at 14.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

3

a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

## III. DISCUSSION

### A. Claims Against MCPO Defendants

MCPO Defendants argue that all claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 should be dismissed with prejudice as they are not considered "person[s]" amenable to suit. MCPO Defendants also argue that Plaintiff's claim for violation of the New Jersey Constitution (Count 6) is, rather, truly a claim under the New Jersey Civil Rights Act ("NJCRA") and they are not amenable to suit under the NJCRA either. Insofar as Plaintiff only raises a claim for malicious prosecution in his Opposition, rather than in the Complaint, (*see* Pl. Opp'n Br. at 13–14), the Court does not view such a claim as an additional count in this suit.

#### 1. Violation of 42 U.S.C. § 1983 (Counts 1–2)

Section 1983 permits private civil actions for damages against any person who, acting under the color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or federal law. *See* 42 U.S.C. § 1983. A plaintiff must establish (1) a deprivation of a federally protected right and (2) that this deprivation was committed by a person acting under the color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

As prosecutors and a detective at a prosecutor's office, MCPO Defendants are state actors who are acting "under color of state law." However, MCPO Defendants argue that both the doctrines of absolute and qualified immunity preclude these claims as Plaintiff's allegations directly concern their performance of "classic prosecutorial, law enforcement and investigative functions," which stem from the underlying criminal investigation, decision to investigate a prosecution, conduct at the grand jury proceedings, and offers for a plea. (MCPO's Moving Br. at 12.) Plaintiff argues that MCPO Defendants acted outside their "judicial capacity" and are not entitled to qualified immunity.

### a. Prosecutors Onofri and Hadley

Prosecutors have "varying levels of official immunity" from actions under 42 U.S.C. § 1983, *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). Absolute immunity attaches to all activities performed in "quasi-judicial" roles, such as in-court activities like the "presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation.'" *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Qualified immunity attaches for actions taken "in an investigative or administrative capacity," *Kulwicki*, 969 F.2d at 1454, and protects official action, if the officer's behavior was "objectively reasonable" considering the constitutional rights affected. *Brown v. Grabowski*, 922 F.2d 1097, 1109 (3d Cir. 1990).

The Third Circuit has adopted a "functional inquiry" to determine the level of immunity attached, focusing on "the nature of the function performed, not the identity of the actor who performed it." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011) (quoting *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008)). This test "separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of

the criminal process.'" *Fogle v. Sokol*, 957 F.3d 148, 159–60 (3d Cir. 2020) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). To overcome the presumption that qualified immunity rather than absolute prosecutorial immunity applies in an action under § 1983, a prosecutor "must show that he or she was functioning as the state's advocate when performing the action(s) in question." *Odd*, 538 F.3d at 208.

The essential question is whether Onofri and Hadley were acting as the State's advocate when performing the alleged violations to be entitled to absolute immunity. They must show that the conduct in question was "associated with the judicial phase of the criminal process." If this Court finds that the prosecutors were performing "administrative actions" not related to conducting judicial proceedings, then Onofri and Hadley would not be entitled to absolute immunity.

Here, Plaintiff's claims against Onofri and Hadley arise from the criminal investigation, the decision to prosecute, their conduct at the grand jury proceedings, and the handling of the plea offers. (*See* Compl. at 8–9.) As noted above, the Complaint alleges that Prosecutor Onofri oversaw the prosecution against Plaintiff and offered two plea deals to him prior to the indictment. (*Id.* at 9.) Plaintiff also alleges that he had pointed to inconsistencies in the evidence, but the prosecutor did not add a supplemental statement to discovery after replying that he would do so. (*Id.*) Plaintiff alleges that Hadley "demonstrably failed" in the handling of the criminal matter against Plaintiff by using "falsified statements and documents" that amounted to "unsubstantiated evidence" to advance the case and led to the grand jury returning a seven-count indictment of "trumped up charges" and "contaminat[ed]" the grand jury through "misleading questioning and statements" and by refusing to answer its questions. (*Id.*) Additionally, Plaintiff alleges that he was the subject of an "inept police investigation(s)" and "fabricated" evidence. (*Id.* at 11.)

6

Because "the decision to initiate a prosecution is at the core of a prosecutor's judicial role," *Kulwicki*, 969 F.2d at 1463, absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding. *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009). A prosecutor's "failure to report . . . alleged inconsistencies [in the evidence] while 'appearing before a judge and presenting evidence" also receives absolute immunity because doing so "involves the [prosecutor's] conduct as advocate[]" for the state. *Fogle v. Sokol*, 957 F.3d 148, 162 (quoting *Burns v. Reed*, 500 U.S. 478, 491 (1991). A prosecutor's decisions regarding plea offers is a "prosecutorial function" and entitled to absolute immunity. *Duffy v. Freed*, 452 F. App'x 200, 202 (3d Cir. 2011). Further, the solicitation of false testimony from witnesses in grand jury proceedings and probable cause hearings, as well as the use of the false testimony in connection with the prosecution is "absolutely protected." *Kulwicki*, 969 F.2d at 1465.

Here, all actions taken by Onofri and Hadley were part of the judicial phases of a criminal prosecution. In deciding to charge Plaintiff based on the investigative materials and the evidence, even if insufficient, Onofri and Hadley would be entitled to absolute immunity, since such decision is "at the core of a prosecutor's judicial role." Even if there were discrepancies or inconsistencies in the evidence, and such evidence was presented in the grand jury proceedings, Onofri and Hadley would receive absolute immunity as they acted as "advocates for the State." Decisions to dispose of a case by plea would also be entitled to absolute immunity. Even had Hadley solicited false testimony during the grand jury proceedings, such conduct is absolutely protected. Plaintiff states that Hadley "performed actions outside of Judiciary Capacity," (Pl. Opp'n Br. at 6), but the record indicates otherwise. By acting as prosecutors and advocates for the State, both Onofri and Hadley have overcome the presumption of qualified immunity. Therefore, Onofri and Hadley are entitled

7

to absolute immunity from the § 1983 claims. Accordingly, the Court will dismiss these claims against them.

### b. Det. Bergondo

Grand jury witnesses—including law enforcement witnesses—are entitled to absolute immunity from any claim based on their testimony. *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). The *Rehberg* Court reasoned that "no grand jury witness has the power to initiate a prosecution" and did not find "any reason to distinguish law enforcement witnesses from lay witnesses." *Id.* While a "detective or state agent who has performed or supervised most of the investigative work in a case may serve as an important witness in the grand jury proceeding and may very much want the grand jury to return an indictment . . . [,] such a witness, unlike a complaining witness at common law, does not make the decision to press criminal charges." *Id.* at 371. Here, Det. Bergondo is a law enforcement officer who performed investigative work for Plaintiff's case. Specifically, she is a detective at the Mercer County Prosecutor's Office. Plaintiff argues that Det. Bergondo "performed actions outside of Judiciary Capacity." (Pl.'s Opp'n Br. at 6.) However, Plaintiff's allegations against Det. Bergondo arise from her criminal investigation and the resulting charges brought against Plaintiff, as well as the "false and misleading testimony" during the grand jury proceedings. (*See* Compl. at 8–9.) These are all within Det. Bergondo's law enforcement duties for the State. Moreover, as a grand jury witness, Det. Bergondo is entitled to absolute immunity from any claim based on her testimony. Thus, even if her testimony against Plaintiff were false or misleading, she would be immune to any claim based on such testimony. Therefore, the Court will dismiss the § 1983 claim against Det. Bergondo.

Given that the Court finds that absolute immunity bars the claims against the MCPO Defendants, it will not address the arguments concerning the doctrine of qualified immunity. Accordingly, the Court will dismiss the § 1983 claims against MCPO Defendants.

2. Violations of 42 U.S.C. §§ 1985 and 1986 (Counts 3–5)

For the same reasons the Court found that MCPO Defendants are entitled to absolute immunity against the § 1983 claims, they are also entitled to such immunity against the §§ 1985 and 1986 claims.

3. Violation of the NJCRA (Count 6)

The NJCRA is modeled after its federal counterpart, 42 U.S.C. § 1983, *Tumpson v. Farina*, 218 N.J. 450, 474 (2014), and has "the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection." *Owens v. Feigin*, 194 N.J. 607, 611 (2008). The NJCRA creates "a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the [New Jersey] Constitution." *See Calan v. City of Jersey City*, Civ. No. 16-9008, 2017 WL 1135231, at *2 (D.N.J. Mar. 27, 2017) (quoting *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017)); *see also* N.J.S.A. 10:6-2(c) (stating that "[a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief."). The Third Circuit has held that claims under the New Jersey Constitution and the NJCRA "trigger the same legal elements and principles as . . . [the]

9

federal causes of action [under Section 1983]." *Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x. 239, 245 n. 4 (3d Cir. 2016). This district has also repeatedly interpreted the NJCRA analogously to § 1983. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 444 (D.N.J. 2011). Count 6, which is brought under the NJCRA, is thus analyzed "through the lens of § 1983." *Id.* Therefore, the analysis of Plaintiff's claim under the New Jersey Constitution, which is really a NJCRA claim, is the same as the analysis of the claims under §§ 1983, 1985 and 1986. The Court has dismissed those claims under §§ 1983, 1985 and 1986. Accordingly, the Court will dismiss Count 6 against the MCPO Defendants as well.

## B. Claims Against Weissman

Weissman argues that all six claims against him should be dismissed with prejudice. The Complaint alleges that Weissman engaged in malpractice, but does not officially raise it as a claim in this suit. The Court views the alleged malpractice as an act in support of Plaintiff's claims of alleged statutory violations, rather than as an additional count in this suit.

### 1. Violation of 42 U.S.C. § 1983 (Counts 1–2)

A § 1983 suit cannot allege a violation through private conduct, even if such conduct is discriminatory or wrongful. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (quotations and citation omitted). Private action effectively becomes state action when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citation omitted). A plaintiff may establish the required nexus in one of three ways: (1) "the private entity has exercised powers that are traditionally the exclusive

prerogative of the state"; (2) "the private party has acted with the help of or in concert with state officials"; and (3) "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (citations omitted).

Here, Plaintiff hired Weissman, an attorney with Helmer, Conley & Kasselman, P.A., to defend and represent him in his case with MCPO Defendants. (Compl. at 8.) No alleged facts in the Complaint indicate that Weissman and his firm were exercising exclusive State powers. A private defense attorney is expected to discuss plea offers and trial strategy, as well as file motions, for their clients. That is exactly what Weissman did. Nothing in the Complaint indicates that Weissman and his firm acted with the help of or in concert with the Mercer County Prosecutor's Office. Further, no alleged facts in the Complaint indicate that Weissman and his firm was "insinuated into a position of interdependence" with the State or MCPO Defendants. Weissman, as a private attorney, went through the legal process independently in defending Plaintiff. Therefore, Weissman is a private actor rather than a state actor and a § 1983 claim cannot be brought against him. Accordingly, the Court will dismiss Counts 1 and 2.

2. Violation of 42 U.S.C. § 1985 (Counts 3–4)

To establish a § 1985 claim, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)). After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected

11

right, he "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)).

Weissman argues that Plaintiff fails to establish the elements required for a § 1985 claim. More specifically, Weissman argues that the Complaint fails to allege a conspiracy or actions that were motivated by racial or class-based discrimination. Here, Plaintiff alleges that Weissman "wouldn't address nor challenge the discrepancies in legal formality by submitting motion(s) to dismiss with prejudice, or an evidentiary hearing." (Compl. at 9.) However, Plaintiff fails to provide a factual basis to demonstrate that there was an agreement or concerted action behind such conduct, and ultimately fails to demonstrate a § 1985 conspiracy between Weissman and MCPO Defendants. Therefore, the Court will dismiss this claim.

### 3. Violation of 42 U.S.C. § 1986 (Count 5)

"[A] § 1986 plaintiff must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clack v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994). Weissman argues that because Plaintiff has failed to properly bring a claim under § 1985, no cause of action exists under § 1986. The first element of a § 1986 claim requires that Weissman had actual knowledge of a § 1985 conspiracy, which the Court has already found does not exist; therefore a § 1985 claim cannot be brought against Weissman.

### 4. Violation of the NJCRA (Count 6)

As discussed above, claims under the New Jersey Constitution and the NJCRA "trigger the same legal elements and principles" as § 1983 actions, *see Estate of Martin*, 649 Fed. App'x. at

245, and this district has repeatedly interpreted the NJCRA as analogous to § 1983. *Trafton*, 799 F. Supp. 2d at 444. Actions under § 1983 require a state actor, but the Court has found Weissman to be a private actor. Therefore, a claim under the New Jersey Constitution cannot be brought against Weissman.

## IV.  CONCLUSION

For the reasons stated above, the Court will **GRANT** the Motions to Dismiss. Given the nature of Plaintiff's claims, the Court finds that amendment to the Complaint would be futile.[3] Accordingly, the Court will DISMISS the Complaint with prejudice. *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). An appropriate Order will follow.

Date: **September 20, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE**

---

[3] Although the issue was not raised by Defendants in their Motions, the Court would also question the viability of Plaintiff's civil rights claims in view of the bar imposed by *Heck v. Humphrey*, 512 U.S. 477 (1994), where an underlying state conviction has not been invalidated. *See, e.g., Deslonde v. State of New Jersey*, Civ. No. 09-3446, 2010 WL 3167777, at *3–4 (D.N.J. Aug. 10, 2010) (dismissing § 1983 claim as barred by *Heck* where the defendant entered a guilty plea).